UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **MANUEL CALLOWAY AND DREW SILLER CALLOWAY** | * | **CIVIL ACTION NO. 18-0992** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **COLOPLAST CORP. AND ABC INSURANCE CO.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is defendant Coloplast Corp.'s motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted [doc. # 8]. The motion is opposed. For reasons set forth below, it is recommended that the motion be granted.

## Background

On July 31, 2018, Manuel Calloway ("Calloway") and Drew Siller Calloway filed the instant suit for damages against Coloplast Corp. ("Coloplast") and ABC Insurance Co. pursuant to the Louisiana Products Liability Act, La. R.S. 9:2800.51, *et seq*. ("LPLA"), as a result of a purportedly defective "penile inflatable implant," a/k/a the Titan Prosthesis,[1] which was manufactured by Coloplast and surgically implanted into Calloway on December 13, 2016. *See* Compl. Following the surgery, Calloway suffered cellulitis, infection of the prosthesis, and incontinence, that required another hospitalization from December 31, 2016, through January 4, 2017, to treat these issues. *Id*. After recovery, Calloway was unable to inflate the prosthesis on several occasions, and when he did so, the pain was unbearable. *Id*. Calloway also asserted that

---

[1] The implant is a self-contained, fluid-filled system designed to allow those suffering from erectile dysfunction to achieve an erection. (Compl.).

the Titan Prosthesis caused him to suffer permanent urethra damage, which will necessitate future surgeries. *Id*. Calloway seeks damages for extreme pain and suffering and emotional distress. *Id*. In addition, Drew Siller Calloway asserted claims for loss of consortium and support. *Id*.[2]

On August 31, 2018, Coloplast filed the instant motion to dismiss for failure to state a claim upon which relief can be granted on the twin grounds that: 1) plaintiffs' state law claims under the LPLA are preempted by the express preemption provision of the Medical Device Amendments ("MDA"), 21 U.S.C. § 360k, to the Federal Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq*.; and 2) plaintiffs' state law claims fail to allege sufficient facts to support a plausible claim for relief.

On October 8, 2018, plaintiffs filed their response in opposition to defendant's motion to dismiss. [doc. # 18]. On October 15, 2018, Coloplast filed its reply brief. [doc. # 19].

On December 26, 2018, however, the court reviewed the complaint and discerned that it did not set forth a basis for the court's exercise of subject matter jurisdiction. (Dec. 26, 2018, Order [doc. # 20]). This discovery prompted a series of court initiated amendments, which ultimately culminated with a third amended complaint filed on January 23, 2019, that finally succeeded in alleging and establishing diversity jurisdiction, 28 U.S.C. § 1332. *See* Third Amend. Compl. ("TAC")

The court notes that an "amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or

---

[2] Albeit, the complaint does not specify the nature of Drew Calloway's relationship with Manuel Calloway.

2

incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)). Here, the TAC merely inserts the previously missing jurisdictional allegations, and then re-asserts all of the substantive allegations from the original complaint. *See* the TAC. Therefore, the sole complaint before the court is the TAC, to which the court will apply the arguments raised by defendant's motion.[3]

### Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. Fed.R.Civ.P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See*

---

[3] The court may consider a motion to dismiss as being addressed to the amended pleading. *Rountree v. Dyson*, 892 F.3d 681, 683–84 (5th Cir.2018), *cert. denied*, 2018 WL 4385808 (Dec. 3, 2018).

*Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra*. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record).

## Analysis

I.     **Preemption**

In response to concerns that state-law governance of medical devices was inadequate,

Congress passed the MDA, which gave the Food and Drug Administration (the "FDA") authority to regulate medical devices and expressly preempted certain state regulations." *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir.2012) (citations omitted).

The MDA established three levels of oversight for medical devices (Class I, Class II, and Class III) depending on the risks presented by each. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316, 128 S.Ct. 999, 1003 (2008); *see also* 21 U.S.C. § 360c(a). The devices receiving the most federal scrutiny are those in Class III. *Riegel, supra*. Indeed, the MDA established a "rigorous regime of premarket approval for new Class III devices." *Id*.[4]

"The FDA spends an average of 1,200 hours reviewing each application, and grants premarket approval only if it finds there is a 'reasonable assurance' of the device's 'safety and effectiveness' . . ." *Riegel*, 552 U.S. at 318, 128 S.Ct. at 1004 (internal citations omitted). The premarket approval process also includes review of the device's proposed labeling. *Id*. Further, "[o]nce a device has received premarket approval, the MDA forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." *Id*. (citation omitted).

In light of this comprehensive premarket approval process, the MDA includes an express preemption provision, which, subject to an exception not applicable here, states that,

> no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement–

---

[4] Most Class III devices, however, are approved by a truncated review procedure called § 510(k) approval, whereby the device is found to be "substantially equivalent" to an existing device, and thus, exempted from the premarket approval process. *Bass v. Stryker Corp.*, 669 F.3d 501, 506–07 (5th Cir.2012) (citing *Riegel*, 552 U.S. at 317, 128 S.Ct. 999). All other Class III devices are approved by means of the "rigorous" PMA process. *Id*.

> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k.

As a result,

> [a] state-law tort claim to recover for injuries allegedly caused by a medical device is preempted if: (1) "the Federal Government has established requirements applicable to [the device]"; and (2) the claims are based on state-law requirements that are "'different from, or in addition to' the federal ones, and that relate to safety and effectiveness."

*Bass*, 669 F.3d at 507 (citations omitted).

Devices that are approved through the premarket approval process automatically satisfy the "federal requirements" prong. *Id*. (citation omitted). As to the second prong, if the state law claims impose duties on Class III premarket approval devices that are different from or in addition to the requirements set forth by the FDA, then they are necessarily preempted. *Parra v. Coloplast Corp.*, No. 16-14696, 2017 WL 24794, at *3 (E.D. La. Jan. 3, 2017) (citation omitted).

To plead a state law products liability claim that "parallels" the FDA's requirements, and thereby evading preemption under § 360k, plaintiff must plead facts to establish that the "manufacturer of a Class III medical device failed to comply with either the specific processes and procedures that were approved by the FDA or the [FDA's Current Good Manufacturing Practices] and that this failure caused the injury . . ." *Rodriguez v. Am. Med. Sys., Inc.*, 597 Fed. Appx. 226, 229 (5th Cir.2014) (citing *inter alia, Bass*, 669 F.3d at 512). In other words, Calloway may bring suit under the LPLA only if he can show a violation of an FDA regulation that rendered the medical device "unreasonably dangerous." *Parra, supra* (citation omitted). Of

course, to successfully plead a parallel claim, a plaintiff's allegations that the manufacturer violated FDA regulations must meet the *Twombly* plausibility standard. *Bass, supra*.

Applying the foregoing principles here, the undersigned, consistent with the practice of other courts, takes judicial notice of the approval process for the Titan Prosthesis which is a matter of public record,[5] and finds that,

> [t]he Titan implant, which was originally called the Mentor Alpha I Inflatable Penile Prosthesis, received premarket approval from the FDA on July 14, 2000. The original premarket approval application for the implant was submitted by Mentor Corporation.
>
> Since 2000, both Mentor and Coloplast have submitted several supplements to the original premarket approval, all of which have been approved by the FDA. On June 14, 2002, the FDA approved a supplemental premarket approval application that allowed the Titan implant to incorporate a hydrophilic coating. On January 14, 2003, the FDA approved another supplemental premarket approval application that allowed further hydrophilic coating of the implant and marketing of the device under a different name-the "Mentor Titan Inflatable Penile Prosthesis." Lastly, on June 13, 2008, the FDA approved a supplemental premarket approval application submitted by Coloplast that allowed several modifications to the device, as well as marketing of the device under the trade name "Titan OTR Inflatable Penile Prosthesis."

*Starks v. Coloplast Corp.*, No. 13-3872, 2014 WL 617130, at *1 (E.D. Pa. Feb. 18, 2014); *see* Decl. of Wendy Feinstein; Def. M/Dismiss, Exh. (detailing FDA websites containing pertinent Titan Prosthesis information); *Spier v. Coloplast Corp.*, 121 F. Supp.3d 809, 815 (E.D. Tenn. 2015) (finding that Titan Prosthesis received and has since maintained premarket approval status).

In short, the Titan Prosthesis is a Class III medical device that went through the FDA's premarket approval process. *Starks, supra*; *Parra, supra*.[6]

---

[5] *See Bass*, 669 F.3d at 510 (court is entitled to take judicial notice of the information presented in the FDA documents); *Parra, supra* (taking judicial notice of the FDA's website, which indicated that the Titan Prosthesis underwent the FDA's pre-market approval process).

[6] FDA regulations classify penile inflatable implants as Class III medical devices. 21 C.F.R. § 876.3350(b).

In response to defendant's motion, Calloway contends that Class III devices that are approved by the FDA as "substantially equivalent" to a preexisting device, i.e, via the § 510(k) approval process, are *not* accorded the benefit of preemption under 21 U.S.C. § 360k. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 494, 116 S.Ct. 2240, 2255 (1996). The court does not take issue with Calloway's statement regarding the effect of the § 510(k) approval process. In this case, however, it remains uncontroverted that the Titan Prosthesis was approved via the full premarket approval process – not the substantial equivalent § 510(k) process. *See* discussion, *supra*. Therefore, plaintiff's argument is inapposite. The court necessarily finds that the first prong of the preemption analysis has been met. *See Riegel, supra*.

Before proceeding to consider whether Calloway's complaint alleges a parallel claim, the court pauses to emphasize that, under Louisiana law,[7] the LPLA provides "the exclusive theories of liability for manufacturers for damage caused by their products. *A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]*." La. R. S. 9:2800.52 (emphasis added); *see also Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997). Accordingly, to the extent that Calloway endeavored to assert potential theories of recovery beyond the LPLA, the claims are not viable. *See Parra, supra*; *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261 (5th Cir.2002) (claims for

---

[7] The parties in this matter implicitly agree that, insofar as plaintiffs' claims are not otherwise preempted by federal law, the disputed issues are governed by the substantive law of Louisiana. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Ace American Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5th Cir. 2012) (applied Texas law where neither side disputed that Texas law applied); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed).

negligence, strict liability, and breach of express warranty are not available as theories of recovery against a manufacturer, independent from the LPLA).

Under the LPLA, liability may attach, if and only if the product is unreasonably dangerous: 1) in construction or composition, 2) design, 3) because of an inadequate warning, or 4) because it fails to conform to an express warranty. La. R. S. 9:2800.54 B. Plaintiff alleges that the Titan Prosthesis is unreasonably dangerous under all four potential avenues for advancing an LPLA claim. However, he does so in little more than conclusory terms. Moreover, to circumvent § 360k's preemptive effect as to his construction or manufacturing defect claims, Calloway must allege how the Titan Prosthesis "failed to comply with either the specific processes and procedures that were approved by the FDA or the [FDA's Current Good Manufacturing Practices] and that this failure caused the injury . . ." *Rodriguez*, 597 Fed. Appx. at 229. Such facts are missing here,[8] and therefore, Calloway fails to state a parallel construction or design defect claim. *Id*. (complaint did not plead a violation of any federal requirement relating to design or manufacturing of the implant).[9]

---

[8] Calloway alleged in his complaint that there was a June 2014 study that discussed the Titan Prosthesis's inflation/deflation issues. However, he did not further elaborate or show how the study demonstrated that the Titan Prosthesis failed to comply with specific FDA regulations.
    Calloway also submitted a copy of a July 1, 2017 notice from Coloplast whereby the manufacturer offered to replace malfunctioning Titan prostheses. (July 1, 2017, Notice; Pl. Response, Exh.). However, the notice does not identify any specific defect with the prosthesis, or otherwise indicate whether the unexplained defect(s) was causally related to the instant suit.

[9] In *Funk v. Stryker, Corp.*, the Fifth Circuit confirmed that the complaint was impermissibly conclusory and vague where: "it does not specify the manufacturing defect; nor does it specify a causal connection between the failure of the specific manufacturing process and the specific defect in the process that caused the personal injury. Nor does the complaint tell us how the manufacturing process failed, or how it deviated from the FDA approved manufacturing process." *Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir.2011)

Calloway's claim for inadequate warnings and/or instructions also is preempted. The court takes judicial notice that the FDA approved specific labeling and specific warning instructions for the Titan Prosthesis. *See Parr, supra*; *Spier, supra*; and *Starks, supra*. The complaint does not discuss the approved FDA warnings, and contains no allegations that Coloplast deviated from these accepted warnings and instructions in any way. Consequently, Calloway necessarily must be seeking to impose liability for Coloplast's failure to include warnings or instructions that are not required by federal law. In so doing, plaintiff's inadequate warning claim seeks to impose additional requirements beyond the FDA, which renders the claim *not* parallel, and thus, preempted. *See Parra, supra*; *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 931 (5th Cir.2006).

Not unlike Calloway's other LPLA claim-variants, his breach of express warranty claim is not per se barred by § 360k. As the Fifth Circuit explained,

> [t]he essence of an express warranty claim is a broken promise. When the promise was one the FDA approved, tort liability for breaking it would conflict with the FDA's view that the representation was a sound one. So when a claim challenges a representation the FDA blessed in the approval process, it is preempted. But when a claim challenges a warranty that goes above and beyond any guarantee the FDA expressly or implicitly approved, it is a parallel one.

*Wildman v. Medtronic, Inc.*, 874 F.3d 862, 867–68 (5th Cir.2017) (internal citation omitted). Again, however, Calloway, did not allege the breach of any representation made to him by Coloplast that was outside of the scope of the representations sanctioned by the FDA in the approval process. Accordingly, he failed to state a parallel breach of warranty claim sufficient to escape § 360k's preemptive reach.

In sum, the undersigned finds that Calloway did not allege facts to support a plausible parallel claim(s), and therefore, his state law products liability claims under the LPLA are

preempted by the MDA.

## II. Sufficiency of LPLA Allegations

Even if Calloway had alleged a non-preempted parallel claim(s), he still failed to allege sufficient facts to state a claim for relief under the LPLA. For instance, "[t]o prevail under the construction or composition theory, Louisiana courts require the plaintiff, *inter alia*, to (i) set forth the manufacturer's specifications for the product and (ii) demonstrate how the product materially deviated from those standards so as to render it unreasonably dangerous." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 698 (5th Cir. 2012) (citations and internal quotation marks omitted). A material deviation is one that increases the propensity for injury. *Id*.

Here, Calloway alleged that the Titan Prosthesis caused infection, incontinence, and pain, plus did not inflate properly. However, these allegations are not appreciably any more extensive than the assertions found wanting by the Fifth Circuit in another similar case:

> [3.] The hip prostheses contained a manufacturing defect in that it was manufactured in such a manner that impurities, residues and bacteria remained on the prosthesis in violation of the FDA standards and requirements and in violation of the manufacturing processes and design approved by the FDA.
>
> [4.] The hip prostheses deviated, in its construction or quality, from the specifications or planned output. As more particularly set forth below, Plaintiff invokes the doctrine of res ipsa loquitur as to the manufacturing defect contained in the hip prosthesis.

*Funk*, 631 F.3d at 782.

As the Fifth Circuit explained, the

> complaint is impermissibly conclusory and vague; it does not specify the manufacturing defect; nor does it specify a causal connection between the failure of the specific manufacturing process and the specific defect in the process that caused the personal injury. Nor does the complaint tell us how the manufacturing process failed, or how it deviated from the FDA approved manufacturing process.

*Funk, supra*.

Calloway's complaint suffers these same deficiencies, and therefore, fails to state a claim for relief under the LPLA for a defect in construction or composition.

For purposes of plaintiff's design defect claim, he must show, amongst other things, that "[t]here existed an alternative design for the product that was capable of preventing [his] damage . . ." La. R.S. § 9:2800.56. Here, the complaint plainly fails to set forth any alternative design that was capable of preventing the alleged injuries.

Furthermore, to "maintain a failure-to-warn claim under the LPLA, a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." *Stahl*, 283 F.3d at 264 (citation omitted). To satisfy the first prong of this test, the plaintiff must allege facts as to the "cause, frequency, or consequences" of the dangerous characteristic at issue. *Id*.

In addition, for claims involving drugs or medical devices that are dispensed by a physician, Louisiana law applies the learned intermediary doctrine. *Guidry v. Aventis Pharm., Inc.*, 418 F. Supp. 2d 835, 840-841 (M.D. La. 2006). In the learned intermediary context, the plaintiff must show that 1) the defendant failed to warn or inadequately warned the physician of a risk associated with the product that was not otherwise known to the physician; and 2) the failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury. *Id*.; *Phillips v. GlaxoSmithKline*, No. 10-0029, 2011 WL 110288 (W.D. La. Jan. 7, 2011).

Calloway did not set forth requisite facts to show that Coloplast failed or inadequately warned his surgeon of the risks of the implant, or that this failure was the cause of plaintiff's injury. Rather, plaintiff's complaint is a bare invocation of the failure to warn theory of recovery.

Finally, the LPLA specifies that

> [a] product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue.

La. R. S. § 9:2800.58.

In this case, Calloway alleges no facts to show that Coloplast conveyed a false warranty regarding the Titan Prosthesis to him or his physician that caused his physician to use the implant, when he otherwise would not have, or that plaintiff's damages were proximately caused by the falsity of the warranty. Accordingly, the court necessarily finds that plaintiff fails to state a claim for relief for an express warranty defect. *See Aucoin v. Amneal Pharm., LLC*, No. 11-1275, 2012 WL 2990697, at *11 (E.D. La. July 20, 2012).

### III. Loss of Consortium Claim

Under Louisiana law, where the court determines that the primary tort victim is not entitled to recovery, then a loss of consortium claim that derives from the principal claim likewise fails. *See Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1031 n.22 (La. 2000) (citation omitted). Here, having determined that Calloway's complaint, as amended, fails to state a claim for relief, the same result necessarily obtains as to Drew Calloway's derivative claim for loss of consortium.

### IV. XYZ Insurance Company

Aside from stating that XYZ Insurance Company is a foreign insurance company doing business in Louisiana, plaintiff did not allege any facts to support a claim against this party, fictitious or otherwise. Therefore, this party too is subject to dismissal.

**Conclusion**

As instructed by *Iqbal*, the court has accorded no weight to the conclusory allegations in plaintiffs' complaint. *See Iqbal, supra*. Plaintiffs' remaining allegations contain no facts sufficient to confer plausibility upon his LPLA claim against defendant. *Id*.; *see also City of Clinton, Ark., supra*. Instead, the complaint remains "a formulaic recitation of the elements of a cause of action," which does not satisfy the Rule 8 pleading standard. *Id*. Under these circumstances, there is no reasonable expectation that discovery will reveal evidence to support the missing elements of the claim(s). *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.

Nonetheless, the court is obliged to "freely" grant leave to amend "when justice so requires." Fed.R.Civ.P. 15(a)(2). Furthermore, "[d]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . . " *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Here, it is conceivable that plaintiffs can cure their deficient pleading via amendment. Accordingly, the instant recommendation of dismissal is subject to plaintiffs' opportunity to seek leave of court to amend their complaint with a proposed pleading that cures the deficient allegations – *within the deadline to file objections to this report and recommendation*.

In the interim, and in the absence of a curative amendment,

IT IS RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 8], filed by defendant, Coloplast Corp., be GRANTED, and that plaintiffs' complaint, as thrice amended, be DISMISSED, with prejudice, in its entirety, as to

all defendants. FED. R. CIV. P. 12(b)(6).[10]

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 5th day of February 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

[10] To the extent that the undersigned has expanded upon the grounds for dismissal urged by movants, the instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties). In any event, the court possesses the inherent authority to dismiss a party sua sponte. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995 WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).